**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 20-1045, 20-1127

In Re: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION

THE KROGER CO.; SAFEWAY, INC.; ROUNDY'S SUPERMARKETS, INC.;
WALGREEN CO.; HY-VEE, INC.; ALBERTSONS LLC; THE GREAT ATLANTIC &
PACIFIC TEA COMPANY, INC.; H.E. BUTT GROCERY COMPANY; SUPERVALU
INC.; PUBLIX SUPERMARKETS, INC.; GREAT EAGLE, INC.; WINN-DIXIE
STORES, INC.,
Appellants in 20-1045

v.

ROSE ACRE FARMS; UNITED EGG PRODUCERS, INC.; UNITED STATES EGG
MARKETERS, INC.

Rose Acre Farms,
Appellant in 20-1127

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-08-md-02002)
District Judge: Hon. Gene E.K. Pratter

Argued January 26, 2021

Before: JORDAN, MATEY, *Circuit Judges*, and HORAN,[*] *District Judge*.

(Opinion filed: March 15, 2021)

---

[*] Honorable Marilyn J. Horan, District Judge, United States District Court for the
Western District of Pennsylvania, sitting by designation.

William J. Blechman
Michael A. Ponzoli
Kenny Nachwalter
1441 Brickell Avenue
Four Seasons Tower, Suite 1100
Miami, FL 33131

Paul E. Slater          [ARGUED]
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, IL 60603
>            *Counsel for Appellants/Cross-Appellees Kroger Co., Safeway Inc., Roundy's Supermarkets, Inc., Walgreen Co., Hy Vee Inc., Albertsons LLC, Great Atlantic & Pacific Tea Co. Inc., and H.E. Butt Grocery Co.*

David P. Germaine
Paul E. Slater          [ARGUED]
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, IL 60603
>            *Counsel for Appellants/Cross-Appellees Supervalu Inc. and Publix Super Markets Inc.*

Moira E. Cain-Mannix
Brian C. Hill
Marcus & Shapira
301 Grant Street
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219

Paul E. Slater          [ARGUED]
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, IL 60603
>            *Counsel for Appellant/Cross-Appellee Giant Eagle Inc.*

Patrick J. Ahern
Ahern & Associates
590 North Sheridan Road
Lake Forest, IL 60045

Paul E. Slater          [ARGUED]
Sperling & Slater

55 West Monroe Street, Suite 3200
Chicago, IL 60603

*Counsel for Appellant/Cross-Appellee Winn Dixie Stores*

Donald M. Barnes
Jay L. Levine     [ARGUED]
Porter Wright Morris & Arthur
2020 K. Street, N.W.
Suite 600
Washington, DC 20006

James A. King
Porter Wright Morris & Arthur
41 South High Street
Suite 2900
Columbus, OH 43215

Leah A. Mintz
Robert Palumbos
Duane Morris
30 South 17th Street
Philadelphia PA 19103

*Counsel for Appellees/Cross-Appellant Rose Acre Farms Inc.*

Jan P. Levine
Robin P. Sumner
Troutman Pepper
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

Whitney R. Redding
Pepper Hamilton
501 Grant Street
Union Trust Building, Suite 300
Pittsburgh, PA 15219

*Counsel for Appellees/Cross-Appellants United Egg Producers and United States Egg Marketers, Inc.*

Michael A. Lindsay
Dorsey & Whitney
50 South Sixth Street
Suite 1500

Minneapolis, MN 55402
*Counsel for Amicus Curiae in Support of Appellees National Council of Farmer Cooperatives*

---

## OPINION[**]

---

MATEY, *Circuit Judge*.

We return for another chapter in the long-running dispute over allegations of price-fixing in the egg industry. In this installment, the Appellants argue the District Court improperly instructed the jury on the elements of an antitrust conspiracy. But the instruction reflected both the case they tried and the law. And any murkiness around the challenged instruction is more than clarified by the whole of the Court's charge. So we will affirm.

## I. BACKGROUND

Over a decade ago, several large national grocery stores[1] (together, "Appellants" or "Direct Action Plaintiffs"), sued United Egg Producers ("UEP"), United States Egg Marketers ("USEM"), and Rose Acre Farms,[2] alleging a horizontal conspiracy to reduce supply—and consequently inflate prices—of domestic eggs in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. UEP and USEM are leading egg-producer trade groups, while

---

[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Kroger Co., Safeway Inc., Walgreen Co., Hy-Vee, Inc., Albertsons LLC, the Great Atlantic & Pacific Tea Company, H.E. Butt Grocery Company, Roundy's Supermarkets, Inc., Publix Super Markets, Inc., Supervalu Inc., Giant Eagle, Inc., and Winn-Dixie Stores, Inc.

[2] Along with several other defendants, the remainder of whom settled prior to trial.

Rose Acre Farms is the nation's second largest egg producer.[3] The Direct Action Plaintiffs allege that, beginning in 1999, UEP, USEM, and Rose Acre hatched a plot to reduce egg supply in three parts: (1) short-term supply measure recommendations, including early-induced molting, early slaughter of hens, and reduced chick hatch rates; (2) the UEP Certified Program, requiring producers to follow a list of guidelines like cage-space restrictions; and (3) a coordinated export program to maintain a deflated domestic supply.

Like many Section 1 cases, the Appellants never found the smoking gun directly proving a conspiracy. Instead, they presented evidence suggesting motive (higher prices) and means (the three industry programs). Naturally, Appellees countered with evidence of a mix of innocuous and laudable reasons for each.

Trial ran nearly a month and, relevant to this appeal, the District Court instructed the jury:

> Under the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. Therefore, you must determine, first, whether there was a contract, agreement, combination, or conspiracy that restrained trade; and if so, second, whether the restraints challenged here—that is, A, the UEP recommended short-term measures; B, the UEP Certified Program as challenged; and C, the USEM export program—are together unreasonable. These three alleged restraints must all be part of a single conspiracy, as opposed to, for example, three different conspiracies that were independent of each other.

---

[3] A class of "direct purchasers" brought a similar suit. *See In re Processed Egg Prods. Antitrust Litig.*, 962 F.3d 719, 721–22 (3d Cir. 2020) ("*Processed Egg Products I*"). The direct purchaser class action went to trial first; the jury returned a verdict for the Defendant-Appellees, and we later affirmed.

(App. at 44–45.) ("Jury Instruction No. 16"). Similarly, the first question on the verdict form asked:

> Do you unanimously find, by a preponderance of the evidence, that there was a conspiracy to reduce the supply of eggs comprised of (1) recommended short-term supply measures, (2) the United Egg Producers (UEP) Certified Program as challenged, and (3) United States Egg Marketers (USEM) exports?

(App. at 2.) ("Question 1"). Appellants objected to the wording of the instructions and the verdict form.

After a very brief deliberation, the jury answered "no" to Question 1, leaving no need to answer the rest. The District Court entered judgment for the Defendant-Appellees. The Direct Action Plaintiff-Appellants timely appealed.[4]

## II. DISCUSSION

The Appellants make two arguments on appeal. First, the jury instructions and verdict form did not match the law; second, the conduct was a *per se* violation of Section 1, so the District Court erred in instructing the jury on the rule of reason. But the jury instructions, as a whole, accurately stated the law, and the rule of reason was the proper mode of antitrust analysis.[5]

### A. The Jury Instructions

We review jury instructions and verdict forms for an abuse of discretion, but our "review is plenary when the issue is whether the instructions misstated the law." *Armstrong*

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.

[5] Because we affirm the judgment for the Appellees, we decline to consider the issues raised in their conditional cross-appeal.

*v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 245 (3d Cir. 2006); *see Waldorf v. Shuta*, 896 F.2d 723, 740 (3d Cir. 1990). Throughout, our focus is "whether the charge, 'taken as a whole, properly apprise[d] the jury of the issues and the applicable law.'" *Armstrong*, 438 F.3d at 245 (quoting *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 275 (3d Cir. 1998)).

Appellants argue that the use of the conjunctive "and" in Instruction No. 16 and Question 1 "did not allow the jury to find an unlawful conspiracy unless [Appellants] proved that *all* three mechanisms were agreed to and employed." (Opening Br. at 13.) Not so, respond Appellees, who note the use of "and" captured the case the Appellants sought to prove. They reason that because the Direct Action Plaintiffs repeatedly defined the alleged conspiracy by the three methods, the instruction and question naturally mirrored their claims.

We evaluate jury instructions "as a whole," *Smith*, 147 F.3d at 275, and cannot draw conclusions based on one word in isolation. Looking at the instructions in total means that even a single error will not invalidate the jury's verdict "if it is highly probable that the error did not affect the outcome of the case." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 88 (3d Cir. 2019); *see also Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 612 (3d Cir. 2011) ("When a jury instruction is erroneous, a new trial is warranted unless such error is harmless."). Similarly, an error in a verdict form is harmless if the jury got the correct information elsewhere. *See United States v. Espino*, 892 F.3d 1048, 1053 (9th Cir. 2018); *United States v. Jones*, 664 F.3d 966, 982 (5th Cir. 2011).

That is the case here. Even assuming error in Instruction No. 16 or Question 1, the instructions as a whole accurately stated the law. While Instruction No. 16 and Question 1 both used the conjunctive "and," the District Court repeatedly used disjunctive language when instructing the jury on the means or methods used to carry out the conspiracy. The District Court noted the Act "prohibits contracts, combinations, and conspiracies that unreasonably restrain trade" and that a "conspiracy is an agreement or understanding between two or more persons to do something illegal" without mention of any overt acts. (App. at 43, 46.) The instructions repeatedly emphasized that the *agreement* was the important component, not the acts used to carry out that agreement.

Most significantly, the District Court specifically told the jury:

> It's also not necessary that all of the means or methods claimed by the Plaintiffs were agreed upon by each individual Defendant to carry out the alleged conspiracy, nor that all the means or methods that were agreed upon were actually used or put into operation. . . . It is the agreement or the understanding to restrain trade by limiting egg supply that can constitute a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

(App. at 48.) No ambiguity here, and the Appellants did not need to prove the Appellees used all three mechanisms to prove an illegal conspiracy.

Taken together, the full jury instructions allow one construction that does not inject an overt-act requirement into Section 1. It is, in short, simply the case the Direct Action Plaintiffs chose to make.

8

District Courts deserve, and receive, great latitude in the difficult task of crafting jury instructions. Here, the Court here acted well within that discretion and, equally, in accordance with law. For that reason, we will affirm the jury's verdict.

**B.      The Rule of Reason**

Appellants argue the District Court erred by declining to instruct the jury that the conduct here constituted a *per se* violation of the Section 1. Our review of the "selection of a mode of antitrust analysis" is plenary. *Processed Egg Products I*, 962 F.3d at 726 n.7.

Setting aside the fact that the jury said there was no conspiracy at all, our opinion in *Processed Egg Products I* already answered the objection raised by the Appellants here. There, we explained the rule of reason applied because the UEP Certified Program had pro-competitive benefits and "was not an express agreement to reduce the supply of eggs, much less to fix prices." *Id.* at 728.

The same is true here. Appellants argue for a different outcome because their request more closely followed the Supreme Court's language in *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940). But "the test for determining what constitutes *per se* unlawful price-fixing is one of substance, not semantics." *United States v. Brown Univ.*, 5 F.3d 658, 670 (3d Cir. 1993). And the *per se* rule is "appropriate only after courts have had considerable experience with the type of restraint at issue, and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 886–87 (2007) (citations omitted).

We have already evaluated the substance of the UEP Certified Program and concluded that it does not fall into the narrow subset of "manifestly anticompetitive" restraints. *Id.* at 886 (quoting *Continental T.V. v. GTE Sylvania*, *Inc.*, 433 U.S. 36, 50 (1977)). Because there is no distinction between the restraints at issue in *Processed Egg Products I* and those here, the District Court did not err by using the rule of reason.

### III. CONCLUSION

For these reasons, we will affirm the judgment entered in favor of Appellees.